# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**KATHY HAYWOOD and LIA HOLT, on
behalf of themselves and all others similarly
situated,**

**Plaintiffs,**

**v.**

**MASSAGE ENVY FRANCHISING,
LLC,**

**Defendant.**                                    **Case No. 3:16-cv-01087-DRH-SCW**

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I.        Introduction

Pending before the Court is defendant Massage Envy Franchising, LLC (hereinafter "MEF") Motion to dismiss or alternatively to strike (Doc. 27). MEF contends that the amended class action complaint ("amended complaint") should be dismissed with prejudice for lack of subject matter jurisdiction and failure to state a claim. In the alternative, MEF moves to strike the class action allegations because they are both facially and inherently deficient. MEF also requests the Court find judicial notice of MEF's franchise disclosure document and MEF's training documents (Doc. 29). Haywood filed a response in opposition to defendant's request for judicial notice on December 29, 2016 (Doc. 33) and filed a response in opposition to defendant's motion to dismiss and strike on (Doc. 40).

MEF filed a reply (Doc. 42). For the reasons discussed below, the Court grants MEF's motion.

## II. Background

Plaintiffs' amended complaint alleges that MEF harmed Kathy Haywood and Lia Holt and others similarly situated by committing unfair and deceptive practices in "offering and selling what it stated were one-hour massages or 'massage sessions' that provided no more than 50-minutes of massage time. . ." (Doc. 20 at 1, ¶ 1). Plaintiffs claim that MEF did not adequately disclose that consultation with the massage therapist and time to undress and redress were part of the advertised hour-long massage session. Therefore, plaintiffs argue that they received less value than was promised for the amount that they paid.

MEF is a franchisor based in Scottsdale, Arizona that exclusively grants licenses "to various independently owned and operated entities for use of the Massage Envy® name, trademark, and standardized business operations in exchange for payment of a franchise fee and royalties." (Doc. 28 at 2). Because each location is independently owned, each franchise is responsible for making appointments, deciding which services to offer and at what price, and whether to provide certain discounts (Id. at 3). MEF has multiple franchises in both Illinois and Missouri (Doc. 20 at 2, ¶ 5).

Kathy Haywood is a resident of East St. Louis, Illinois and she visited the O'Fallon, Illinois Massage Envy Franchise location on two occasions (Id. at 1, ¶ 3). The first occurred on May 11, 2016 after receiving a $75 gift card from her

daughter, Amber. *Id.* at 48, ¶ 119. When Amber purchased the card, MEF's website said that the $75 gift card would provide for a one-hour massage session (Id. at 20–21, ¶ 49–52). Haywood claims that the downloaded e-gift card that she received did state that "Session includes massage or facial and time for consultation and dressing," but it was contained in fine print at the bottom of the email instead of in plain sight (Id. at 48, ¶121). Haywood states that when she was booking her appointment on the MEF's website, she did not find any disclaimer that the massage would last less than the advertised one hour (Id. at 48, ¶ 123). Likewise, when she arrived at the O'Fallon franchise, nothing alluded to the actual length of the massage session. (Id. at 48, ¶ 124).

On the second occasion, Haywood made an appointment with the O'Fallon franchise on September 8, 2016 for another one-hour session to verify that the session included only 50 minutes of actual massage time and 10 minutes for dressing and consultations (Id. at 49, ¶ 127). Again Haywood claims that no sign or employee indicated that the actual massage would only be 50 minutes except for a card she found in a stack on the front desk on her way out (Id. at 49, ¶ 128–29).

Lia Holt is a resident of Missouri. In or about April 2012, she accessed the MEF website to research the prices for a one hour massage and to find a Massage Envy location close to her. Thereafter, she telephoned the Oakville, Missouri Massage Envy franchise to book an appointment for a one-hour massage (Id. at 49, ¶ 131). She also asserts that she went to the Oakville, Missouri Massage Envy

for a massage and that the actual massage time lasted 50 minutes (Id. at 50, ¶ 132).

On November 14, 2016, Haywood and Holt filed the amended complaint on behalf of Illinois and Missouri residents who paid for a one-hour massage session, but only received 50 minutes of actual massage time (Id. at 57, ¶ 168).[1] The Amended complaint contends that MEF violated the unfair and deceptive practices provisions of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/1 *et seq.* and the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010 *et seq. Id.* at 1, ¶ 2. Specifically, plaintiffs allege six counts against MEF: Count I - Affirmative Deception in Violation of the ICFA; Count II - Omissions of Material Fact in Violation of the ICFA; Count III - Unfair Practices in Violation of the ICFA; Count IV - Affirmative Deception in Violation of the MMPA; Count V - Omissions of Material Fact in Violation of the MMPA; and Count VI - Unfair Practices in Violation of the ICFA (Id. at 59–69). In response, MEF filed a motion to Dismiss and Strike on December 15, 2016, claiming that the Court lacks subject matter jurisdiction because the plaintiffs lack standing to bring this action due to the fact that neither plaintiff has a cognizable injury that is fairly traceable to MEF (Doc. 28 at 1). Additionally, MEF claims that the plaintiffs also fail to state a claim which relief may be granted because neither plaintiff "has alleged a plausible theory of deception or a cognizable injury or damages under the ICFA or the MMPA" (Id.).

Plaintiffs seek to represent the following classes:

---

[1] Haywood filed the initial class action complaint on September 27, 2016 (Doc. 1).

Illinois class. All consumers who, in the State of Illinois, purchased a one-hour massage or massage session from Massage Envy or its franchisees (other than a purchase as part of a membership) and received no more than 50 minutes of actual massage time.

Missouri class. All consumers who, in the State of Missouri, purchased a one-hour massage or massage session for personal, family or household purposes from Massage Envy or its franchisees (other than a purchase as part of a membership) and received no more than 50 minutes of actual massage time.[2]

### III. Judicial Notice

First, the Court will address the defendant's request for judicial notice of MEF's franchise disclosure document and MEF's training documents. The Federal Rules of Evidence provides that the Court may take judicial notice of adjudicative facts if they are "not subject to reasonable dispute" and either: "(1) are generally known within the within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. RULES OF EVID. 201(b)(1)(2); *Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012) (citing *General Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1081 (7th Cir. 1997)). Additionally, as the MEF correctly stated, the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." FED. RULES OF EVID. 201(c)(2). However, judicial notice requires a high standard because it "substitutes the

---

[2] According to the amended complaint, "[t]he class periods are the periods beginning with the dates of the applicable statutes of limitations began to run for the respective state and ending when Massage Envy changed its website approximately one month after the original complaint was filed herein to remove the deceptive statements and to disclose clearly that a one-hour massage session includes only 50 minutes of massage time." (Doc. 20, ¶ 170).

acceptance of a universal truth for the conventional method of introducing evidence." *General Elec. Capital Corp.*, 128 F.3d at 1081. Therefore, judicial notice warrants "the traditional caution it is given, and courts should strictly adhere to the criteria established by the Federal Rules of Evidence before taking judicial notice of pertinent facts." *Id.*; *see also Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016) ("Judicial notice is a powerful tool that must be used with caution.").

Here, the Court agrees with the plaintiffs that MEF did not adequately establish the authenticity of the exhibits and whether those documents are publically available in order to satisfy Rule 201 for judicial notice. Doc. 33 at 2–5. The burden of proof is on the proponent to show the accuracy of the documents and whether they are free from reasonable dispute. FED. RULES OF EVID. 201(c)(2). MEF did not provide any authentication to establish the accuracy of the exhibits and the Court has no way of knowing whether the exhibits are in fact publically available. *See, e.g., Rowe v. Gibson*, 798 F.3d 622, 628–31 (7th Cir. 2015) (stating that Internet searches cannot be found to be conclusive or accurate enough for judicial notice even if they are from a reputable medical website); *Vajk v. Tindell*, No. 97-2030, 1998 WL 60391 *3 (7th Cir. Feb. 9, 1998) (ruling that the Court did not err by refusing to grant judicial notice of letters sent directly to the Court which the Court did not read nor could authenticate). Merely citing to statutes that require disclosure in some cases does not show that the documents are publically available. In this case, the defendants cite federal regulation 16 C.F.R. §

436.2, which only requires disclosure to a franchisee when requested, and 815 ILCS 705/37, which states that the Administrator can withhold any information from the public that he or she determines is "not necessary in the public interest or for the protection of franchisees." 815 ILCS 705/37. Neither of these statutes demonstrates that MEF's exhibits are currently publically available. To the contrary, the financial disclosure document shows that Illinois is exempt from the rule requiring registration of the document with the state Administrator. Ex. 1 at 3–4. MEF's financial statement and training documents are not of the type of facts so universally or generally known as to merit judicial notice, such as statutes or prior court documents. *See, e.g., Starns,* 677 F.3d at 773–74 (citing *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994)) (holding that the Court can take judicial notice of earlier state court records); *United States v. Arroyo,* 310 Fed.Appx. 928, 929–30 (7th Cir. 2009) (statutes and geographic boundaries are legislative facts, not adjudicative facts, and therefore, proper for judicial notice).

Moreover, there is clearly a dispute over the facts at issue. Plaintiffs maintain that MEF is responsible for misrepresenting the actual hands-on time on their massages, and the training documents are introduced to demonstrate that MEF encourages staff members to explain the time distribution of the massage during booking. This is a critical issue, and therefore, judicial notice would not be appropriate in this case. *See Daniel,* 833 F.3d at 742–43 (ruling that the Court correctly refused to take judicial notice of the Agreed Order because the facts from the Order were in dispute); *Hennessy v. Penril Datacomm Networks, Inc.,* 69

F.3d 1344, 1354 (7th Cir. 1995) ("In order for a fact to be judicially noticed, indisputability is a prerequisite."). For the reasons stated above, the Court **DENIES** MEF's request for judicial notice.

## IV.    <u>Motion to Dismiss</u>

MEF moves to dismiss pursuant to FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6). A Rule 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge 7,* 570 F.3d 811, 820 (7th Cir. 2009). The Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), that Rule 12(b)(6) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face."  In making this assessment, the district court accepts as true all well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009); *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7th Cir. 2007).

Even though *Twombly* (and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)) retooled federal pleading standards, notice pleading remains all that is required in a complaint. "A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1083 (7th Cir. 2008) (citations and quotations omitted).

The Seventh Circuit Court of Appeals offers further guidance on what a complaint must do to withstand dismissal for failure to state a claim. The Court in *Pugh v. Tribune Co.,* 521 F.3d 686, 699 (7th Cir. 2008) reiterated the premise: "surviving a Rule 12(b)(6) motion requires more than labels and conclusions;" the complaint's allegations must "raise a right to relief above the speculative level." A plaintiff's claim "must be plausible on its face," that is, "the complaint must establish a non-negligible probability that the claim is valid..." *Smith v. Medical Benefit Administrators Group, Inc.,* 639 F.3d 277, 281 (7th Cir. 2011); See also *Scanlan v. Eisenberg,* 669 F.3d 838, 841 (7th Cir. 2012) (Rule 12(b)(1) motion to dismiss for lack of standing). With this standard in mind, the Court now turns to defendant's arguments for dismissal.

## V. <u>Analysis</u>

### A. **Subject Matter Jurisdiction/Standing**

Defendants argue that the plaintiffs lack standing to bring ICFA and MMPA claims because plaintiffs did not allege a cognizable injury that can be "fairly traceable" to MEF (Doc. 28 at 8). For standing to be satisfied, a plaintiff must establish: "(1) [it] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lehn v. Holmes,* 364 F.3d 862, 871 (7th Cir. 2004) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.,* 528 U.S.

167, 180–81 (2000)). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883–89 (1990)).

MEF challenges Haywood's standing claim arguing that Haywood's daughter is the person who purchased the $75 gift card from the MEF website, and then conferred the 60 minute hands-on time promise to Haywood, not MEF (Doc. 28 at 8). However, Haywood alleges that she was deceived by MEF's gift card receipt that failed to disclose the actual time of the massage and by MEF's website that failed to disclose the actual time of the massage when she accessed the website in order to research and schedule her appointment. According to those allegations, she was directly deceived by MEF's fraudulent actions.

The Court finds that even without these additional facts, Haywood has standing because Illinois law recognizes stranding under the ICFA if there is a sufficient "consumer-nexus" between the plaintiff who is not a consumer and a corporate defendant. *Walsh Chiropractic, Ltd. V. StrataCare, Inc.*, 52 F. Supp.2d 896, 913 (S.D.Ill. Sept. 20, 2010). The consumer-nexus test requires Haywood to plead "(1) actions that establish a link between them and consumers; (2) how defendant's unfair or deceptive practice concerned consumers other than Walsh; and (3) 'how the requested relief would serve the interest of consumers.'" *Id.,* (citing *Brody v. Finch University of Health Sciences*, 698 N.E.2d 257, 268–69

(Ill.App.Ct. 1998). By bringing this class action suit, Haywood alleges that many Illinois consumers were likewise deceived by MEF's practices and that the lawsuit addresses consumer protection concerns, thereby establishing an adequate consumer-nexus to withstand standing under the ICFA at this time.

MEF also contends that each franchise is locally and independently owned and operated, and therefore, Haywood and Holt cannot show any communications or contact with MEF which resulted in their injury (Doc. 28 at 2, 8). It is true that MEF is merely a franchisor company who grants franchises to entrepreneurial individuals to manage independently across the United States and that plaintiffs scheduled the appointments through these independently owned franchises, but MEF misunderstands the plaintiffs' injury allegations. Haywood and Holt do not claim that their injury is the 50 minute massage that occurred at the individual franchises, but that MEF's national website and policies deceptively and fraudulently mislead them into believing they purchased 60 minutes of hands-on time when MEF knew the massage would only last 50 minutes. The allegations support the inference that if MEF had effectively disclosed the actual hands-on time of the massage, plaintiffs would not have brought this lawsuit because there would have been no deceptive practices at issue. Plaintiffs only need to show "a causal connection between the injury and the conduct complained of" in order to establish traceability. *Rawoof v. Texor Petrol. Co.*, 521 F.3d 750, 756 (7th Cir. 2008). Plaintiffs state that MEF's deceptive acts caused their injuries of receiving a shorter massage than advertised, which satisfies Article III standing.

However, this also means that plaintiffs' injuries must be limited to the activities that MEF directly controls, namely the information on the gift card receipt and the national MEF website. *See Anthony v. Am. Airlines, Inc.*, No. 03 C 3681, 2006 WL 2794777, at *4 (N.D.Ill. Sept. 27, 2006) ("Article III requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."). The allegations that discuss the interactions with the employees at individual MEF franchise locations must be discarded. A company's issuing of certain quality control measures to ensure brand uniformity cannot be used as evidence of a franchisor's control of independent franchisee actions, thereby, triggering liability. *See Brunner v. Liautaud*, No. 14–c–5509, 2015 WL 1598106 at *4 (N.D.Ill. Apr. 8, 2015) (citing *Patterson v. Domino's Pizza, LLC*, 60 Cal.4th 474, 478 (Cal. 2014) ("A franchisor, which may have thousands of stores located throughout the country, often imposes comprehensive and meticulous standards to protect its brand and operate the franchises in a uniform way in order to maintain a consistent customer experience."); *Braucher ex rel. Braucher v. Swagat Group, L.L.C.*, 702 F.Supp.2d 1032, 1043 (C.D.Ill. Mar. 19, 2010) (holding that a franchisor is not responsible for the actions of franchisees unless the franchisor "asserts more direct control than these limited rights associated with maintaining the quality of its brand."); *Bartolotta v. Dunkin' Brands Group, Inc.*, No: 16 CV 4137, 2016 WL 7104290 at *2 (N.D.Ill. Dec. 6, 2016) (same).

Here, MEF's training manuals and supervisory role are limited to maintaining the Massage Envy brand and do not establish the level of control needed to confer franchisee liability onto the franchisor. Moreover, MEF's Franchising Agreement clearly states that

> "[w]ith the exception of policies regarding inappropriate conduct and minimum requirements for managers, massage therapists and estheticians, any personnel policies or procedures which are made available in the Operations Manual are for your [franchisee's] optional use and are not mandatory. You shall determine to what extent, if any, such personnel policies and procedures may be applicable to your Business operations in your jurisdiction. You and we recognize that we neither dictate nor control labor and employment matters for you and your employees."

(Doc. 29, Ex. 1 at B-1 pg. 12). MEF's training manuals encourage staff members to fully discuss the duration of the appointment and massage, but individual employees' decisions to forego this instruction cannot be attributed to MEF (Doc. 29, Ex. 2-4). Accordingly, MEF cannot be liable for the actions of independent franchisee's employees, but the alleged fraud, concealment, or deception on MEF's website and general gift cards that the national company controls can be "fairly traceable" to MEF.

## B. FRCP 9(b)

Although both Haywood and Holt have standing, the claims in the amended complaint involving fraud under the ICFA and the MMPA must also meet the higher pleading standard pursuant to Federal Rule of Civil Procedure 9(b). *See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) ("When a plaintiff in federal court alleges fraud

under the ICFA, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies."); *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013) (same). FRCP 9(b) states that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. Rules Civ. Pro. 9(b). Both Illinois and Missouri law require the plaintiff to describe the "who, what, when, where, and how of the fraud" similar to the first paragraph of a newspaper story. *Pirelli*, 631 F.3d at 441–42; *H & Q Properties, Inc. v. Doll*, 793 F.3d 852, 856 (8th Cir. 2015) (ruling that a plaintiff must state the specific circumstances of the fraud "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby."). But because availability of such information will vary among parties, the 9(b) standard is determined on a case-by-case basis. *Emery v. Am. Gen. Fin., Inc.,* 134 F.3d 1321, 1324 (7th Cir.1998).

However, according to Illinois law, the more rigorous 9(b) standard only applies to the deceptive practices allegations, while claims of unfairness are governed under the FRCP 8(a) notice pleading standard. *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 737 (7th Cir. 2014). The Seventh Circuit adopts the Federal Trade Commission 5(a) approach to determining unfairness: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Windy City Metal Fabricators & Supply, Inc., v. CIT Tech. Financing*

*Servs. Inc.*, 536 F.3d 663, 669 (7th Cir. 2008). The pleading may suffice even if the claim does not contain all three factors. *Id.* ("A court may find unfairness even if the claim does not satisfy all three criteria."). A heavy showing of one factor may compensate for the lack of evidence of the other two. *Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 961 (Ill. 2002) (a "practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.").

In Missouri, the courts normally do not make a distinction between deceptive and unfair practices under the MMPA. *See, e.g., Khaliki v. Helzberg Diamond Shops, Inc.,* No. 4:11–CV–00010–NKL, 2011 WL 1326660 at *3 (W.D.Mo. Apr. 6, 2011) ("the Court reconfirms that Rule 9(b) states the applicable standard of pleading for claims made under the MPPA."); *Blake v. Career Educ. Corp.,* No. 4:08CV00821 ERW, 2009 WL 140742 at *2 (E.D.Mo. Jan. 20, 2009) ("The United States District Courts in Missouri have consistently applied Rule 9(b) to cases arising under the MMPA.") (citations omitted).

     1. <u>Haywood's Pleading</u>

     a. *Deceptive Practices Claims*

Plaintiff Haywood raises claims of both deceptive and unfair practices under the ICFA. Because the deceptive allegations involve fraudulent behavior, the claims must meet Rule 9(b)'s particularity requirements. Haywood's allegations do state the basis of the fraud, the time and the place of the fraud, and who committed the alleged fraud. Doc. 20 at ¶¶ 119–30. Claims have been struck

down for lack of particularity for failure to name the individuals responsible for the fraud. *See, e.g.*, *Camasta*, 761 F.3d at 737 (7th Cir. 2014); *Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 898 (8th Cir. 2014). But because Haywood claims the corporation itself, not any individual, is the perpetrator, that omission is warranted. Plaintiff Haywood explicitly states that MEF deceived her by failing to disclose the actual hands-on time of the massage session, and the injury was receiving a massage of lesser value than MEF had advertised. Doc. 20 at ¶ 154. Accordingly, the amended complaint successfully alleges the ICFA claim with sufficient particularity to pass muster under Rule 9(b).

### b. *Unfair Practices Claims*

As discussed above, Haywood's unfair practices claims do not need to satisfy the heightened Rule 9(b) standards, but still need to pass basic Rule 8(a) notice pleading standards. Therefore, the allegations in the pleading must "raise a right to relief above the speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). Haywood relies solely on MEF's unethical business practices to show that MEF's advertising was unfair. Doc. 20 at ¶¶ 135–51. The amended complaint includes ethical guidelines from the Direct Marketing Association to demonstrate MEF's violation of customary ethical practices. *Id.* Illinois courts have agreed that if a plaintiff can show a strong showing of one unfair criterion, then the complaint will be upheld. Because the amended complaint adequately provides facts of possible unethical behavior on the part of

MEF and, if proven true, could result in "relief above a speculative level", the pleading is valid under Rule 8(a). *Tamayo*, 526 F.3d at 1084.

2. Holt's Pleading

a. *Deceptive and Unfair Practices Claims*

Plaintiff Holt also brings deceptive and unfair allegations under the MMPA. Unlike Illinois, Missouri courts normally treat deceptive and unfair allegations the same under the MMPA, and therefore, Rule 9(b) applies to both claims. *See supra, Khaliki , 2011 WL 1326660 at *3; Blake, 2009 WL 140742 at *2. In this case, Holt's pleading is far too bare to survive Rule 9(b) scrutiny. Holt's claims do not sufficiently provide a time or a place for the fraudulent behavior or describe how she was particularly deceived. The complaint only alleges that Holt called the Oakville, Missouri MEF location to schedule an appointment "in or about April 2012," and "accessed Massage Envy's website to research the prices for a one-hour massage." Doc. 20 at ¶ 131. Holt does not state the price of the massage or how the value of what she received is less than what she agreed to pay. *See Snelling v. HSBC Card Servs. Inc.,* No. 4:14CV431 CDP, 2015 WL 457949 at *9 (E.D. Mo. Feb. 3, 2015) (holding that Snelling's fraud pleadings against HSBC's commercials did not satisfy Rule 9(b) requirements because "Snelling never alleges when in those years the commercials were aired—let alone who aired them or how the advertisements connect to these defendants."). These facts do not support the "content of the misrepresentation, [or] the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal.*, 536

F.3d at 669 (quoting *Gen. Elec. Capital Corp.*, 128 F.3d at 1078); *See also Wivell*, 773 F.3d at 898. Rule 9(b) requires plaintiffs to engage in deeper investigating prior to filing suit to combat the inherently prejudicial and reputation damaging effects of a fraud based lawsuit on a business. *See Camasta*, 761 F.3d at 737 (quoting *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)) ("One of the purposes of the particularity and specificity required under Rule 9(b) is 'to force the plaintiff to do more than the usual investigation before filing his complaint.'"). Holt's allegations do not show any signs of pre-trial investigation and enhanced particularly. Accordingly, Holt's pleading fails the Rule 9(b) requirements.

## C. Failure to State a Claim

### 1. ICFA Claims

The Illinois Consumer Fraud Act intends to "to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Camasta*, 761 F.3d at 737. The statute is "liberally construed to effectuate its purpose." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (quoting *Robinson*, 775 N.E.2d 951, 960). In order to state a claim under the ICFA, a plaintiff must show: "(1) a deceptive act or practice by [defendant]; (2) that the act or practice occurred in the course of conduct involving trade or commerce; (3) that [defendant] intended [plaintiffs] and the members of the class to rely on the deception; and (4) that actual damages were proximately caused by the deception." *Oshana v. Coca-Cola*

*Co.,* 472 F.3d 506, 513–14 (7th Cir. 2006) ("In other words, a damages claim under the ICFA requires that the plaintiff was deceived in some manner and damaged by the deception."). Under the ICFA, the element of actual damages "requires that the plaintiff suffer actual pecuniary loss." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). For example, in the case where an individual customer brings an ICFA action against a corporation "actual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" *Id.* (citing *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197 (Ill. 2008)).

In this case, Haywood states that MEF's gift card receipt and national website did not adequately disclose the actual hands-on time of the massage, causing customers to believe the hands-on session would constitute a full hour when it really only lasted 50 minutes. Doc. 20 at ¶¶ 152–59. To satisfy the first element of the ICFA, such practices must be considered deceptive or unfair under the statute. *Baston v. Live Nation Entertainment, Inc.,* 746 F.3d 827 (7th Cir. 2014) (holding that including a parking fee with the concert ticket did not violate ICFA because it was not a deceptive or unfair business practice). Haywood's amended complaint concedes that the gift card receipt does include the language, "Session includes massage or facial and time for consultation and dressing," (Doc. 20 at ¶ 121), and that MEF did provide a disclaimer on their website indicating the actual hands-on time of the massage, (Doc. 20 at ¶ 20), all of which suggest curative measures against deception. However, she believes the warnings to be

ineffective at overcoming the misrepresentation that the actual hands-on time would be an hour, and the Court could agree that these acts at least constitute unethical practices, and therefore unfair practices under the ICFA.

Even if the Court agrees with plaintiffs that MEF committed deceptive and unfair practices by acting unethical in its representation of the length of the massage sessions, Haywood's claim would still need to show that she suffered "actual pecuniary loss," and this is where Haywood's amended complaint falls short. In her amended complaint, Haywood states that her daughter bought the $75 gift card for the massage. (Doc. 20 at ¶ 119). Therefore, Haywood did not spend any money on her first massage and cannot claim any actual pecuniary loss resulting from MEF's actions. Also, her second massage visit cannot obtain relief under ICFA because she knew the massage would last only 50 minutes. *Oshana*, 472 F.3d at 514 (citing *Oliverira v. Amoco Oil Co.*, 776 N.E.2d 151, 164 (Ill. 2002) ("those who 'knew the truth' do not have valid ICFA claims because they cannot claim to have been deceived.").

But for the sake of argument, assume that Haywood was the original purchaser of the massages. Haywood does not allege that the price she paid for the massage was more than a 50 minute massage is worth. The Seventh Circuit has routinely rejected plaintiffs' arguments that fail to show either that the product was "defective or worth less than what they actually paid." *Kim v. Carter's Inc.,* 598 F.3d 362, 365 (7th Cir. 2010) (finding that plaintiffs did not suffered actual pecuniary harm because the clothes were priced at their value even if there

were misleading); *Mulligan v. QVC, Inc.,* 888 N.E.2d 1190, 1197 (Ill. 2008) (same); *Camasta*, 761 F.3d at 739–40 (same); *Baston*, 746 F.3d at 833 (same). Secondly, these cases also state that plaintiffs must allege that, but for the deception, they could have searched around and found a better price in the marketplace. *Id.* In her amended complaint, Haywood provided Massage Luxe, a competitor company, one-hour introductory massage rate as $48, after showing that its one-hour massage also only lasts 50 minutes. (Doc. 20 at ¶ 86). An introductory one-hour massage at MEF locations cost $50. (Doc. 20 at ¶ 17). Therefore, Haywood's amended complaint indicates that other massage companies provided similar 50 minute massages at similar prices, showing that a 50 minute massage has the value of roughly $50, which is what she paid, and that she could not have found better price in the marketplace. Moreover, Haywood's claims cannot survive a but-for analysis of causation. MEF's misrepresentation of the actual hands-on time of the massage did not cause Haywood to receive a lesser valued product or induce her to purchase a MEF franchise massage over other competitors. For example, in *Siegel v. Shell Oil Company*, the Seventh Circuit determined that no ICFA violation took place because "Siegel cannot show that the defendants' conduct *caused* him to purchase their gasoline, because many factors contributed to Siegel's gasoline purchasing decision; his claim that the defendants' conduct caused him to purchase their gasoline at 'artificially inflated prices' is therefore undermined."). 612 F.3d at 937. Obviously, Haywood received a massage at a MEF franchise because it was a gift from her daughter,

not because of any action on the part of MEF. Haywood may have had an expectation of a full 60 minutes hands-on massage created by MEF, but her disappointment does not rise to the level of actual damages under the ICFA. Therefore, Haywood has not alleged any actual pecuniary loss entitling her to relief under the ICFA and her claim must be dismissed for failure to state an ICFA violation.

### 2. MMPA Claims

Even if plaintiff Holt had adequately pleaded MMPA allegations under Rule 9(b), her claims would still constitute a failure to state a claim under FRCP 12(b)(6). Like the ICFA, the MMPA was created to protect consumers and "to preserve fundamental honesty, fair play, and right dealings in public transactions." *Scott v. Blue Springs Ford Sales, Inc.,* 215 S.W.3d 145, 160 (Mo. Ct. App. 2006). The Missouri statute condemns "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce" as unlawful practices. MO. REV. STAT. § 407.020.1 (2010). The MMPA contains four elements: plaintiff "(1) purchased or leased [merchandise] from [Defendant]; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property [4] as a result of an act declared unlawful by section 407.020." *Claxton v. Kum & Go, L.C.,* No. 6:14–cv–03385–MDH, 2014 WL 6685816 at *5 (W.D.Mo. Nov. 26, 2014) (citing *Ward v. W. Cnty. Motor Co.,* 403 S.W.3d 82, 84 (Mo.

2013)). Defendants clarify in its response that MEF is a franchisor company that profits from the licensing and royalties of individual franchisees, and does not provide any massage services itself. (Doc. 28 at 2). Therefore, Holt fails the first element under the MMPA because Holt cannot claim that she purchased anything from MEF. Holt instead alleges that she purchased the massage or "merchandise" from the individual Oakville franchise. (Doc. 20 at ¶ 133). Further, Holt does not allege any "ascertainable loss of money or property" which is required to show actual damage under the MMPA. MO. REV. STAT. § 407.025(1); *see also Schriener v. Quicken Loans, Inc.,* 774 F.3d 442, 445 (8th Cir. 2014) (holding that Schriener's MMPA claim must fail because Quicken Loans never charged him for the preparation of the deed of trust, and therefore, Schriener "failed to plead an ascertainable loss of money or property as a result of Quicken Loans's conduct, as required by the MMPA."). Furthermore, Holt needs to demonstrate a "causal connection between the ascertainable loss and the unfair or deceptive merchandising practice." *Owen v. General Motors Corp.,* 533 F.3d 913, 922 (8th Cir. 2008). Here, there is no evidence to suggest that Holt paid more for the massage than it is worth, and therefore, Holt has not alleged that MEF's advertising caused any ascertainable loss of money or property.

Additionally, Holt's unfair business practices claim fails to state a MMPA claim as well. Plaintiffs are correct to state that the Missouri Attorney General promulgated that an unfair practice is (A) either "(1) Offends any public policy as it has been established by the Constitution, statutes or common law of this state,

or by the Federal Trade Commission, or its interpretive decisions; or (2) Is unethical, oppressive or unscrupulous; *and* (B) Presents a risk of, or causes, substantial injury to consumers." MO. CODE REGS. tit. 15, § 60-8.020 (emphasis added); *see* Doc. 20 at ¶ 166. Even if the Court accepts plaintiffs' evidence of the DMA guidelines showing that MEF's acted unethically, Holt failed to allege the second element of "substantial injury to consumers." *See Toben v. Bridgestone Retail Operations*, LLC, 751 F.3d 888, (8th Cir. 2014) (ruling that charging a "shop supplies fee" did not constitute an unlawful practice or cause substantial injury to consumers under the MMPA). As stated above, Holt has not alleged that she received a value that was worth less than what she paid, and therefore, cannot show the existence of a substantial injury to herself or others. As a result, Holt's allegations cannot support a plausible MMPA claim and must be dismissed.

## VI.   Conclusion

For the reasons stated above, the Court **GRANTS** MEF's motion to dismiss. The Court **DISMISSES with prejudice** plaintiffs' amended complaint. The Court **DIRECTS** the Clerk of the Court to enter judgment in favor of defendant and against plaintiffs.

   **IT IS SO ORDERED.**

Signed this 9th day of June, 2017.

Digitally signed by Judge David R. Herndon
Date: 2017.06.09 16:17:08 -05'00'

**United States District Judge**